**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**February 19, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0174** (Berkeley County 19-F-70)

**Alvin D. Gilbert,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Alvin D. Gilbert, by counsel Matthew T. Yanni, appeals the Circuit Court of Berkeley County's February 24, 2020, sentencing order, which also denied his motion for a new trial. Respondent State of West Virginia, by counsel Holly M. Flanigan, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 6, 2018, Petitioner Alvin D. Gilbert and his co-defendant, Mary Cook, met Amy Sims at a bar and grill in Berkeley County. During the course of their conversation, Ms. Sims revealed that she was carrying a large sum of money. The three decided to leave together and travel to a gentlemen's club. After stopping at a gas station, petitioner began driving the opposite direction from the club. Petitioner then pulled off the road into a dark area, exited the vehicle, opened a rear door, pointed a gun at Ms. Sims, and tried to take her purse. When he was unable to get her purse, petitioner pointed the gun at Ms. Cook and told her to pepper spray Ms. Sims. According to Ms. Cook, she pepper sprayed Ms. Sims because petitioner had a gun pointed at her head. The pepper spray incapacitated Ms. Sims to the point that she fell out of the car. Petitioner took Ms. Sims's purse and drove away with Ms. Cook in the passenger seat. Petitioner told Ms. Cook that she would not see her son again if she told anyone what had happened, and he gave her $1,000 to buy her silence.

Deputy David Ritchie of the Berkeley County Sheriff's Department responded to the reported robbery and found Ms. Sims in the 3100 block of Golf Course Road. He took Ms. Sims back to the bar and grill, where he viewed surveillance video from earlier in the day. On May 12, 2018, petitioner and Ms. Cook returned to that same bar and grill, at which time bar employees

1

contacted the police. Officers arrested petitioner and Ms. Cook as they left the bar later that night.

In February of 2019, a grand jury indicted petitioner of first-degree robbery, conspiracy to commit robbery, assault during the commission of a felony, use or presentation of a firearm during the commission of a felony, and five drug charges that were unrelated to the robbery. The grand jury also indicted Ms. Cook of first-degree robbery, conspiracy to commit robbery, assault during the commission of a felony, and the same unrelated drug charges as petitioner. In May of 2019, a grand jury indicted petitioner of separate charges of murder, burglary, prohibited person in possession of a firearm, and numerous drug charges related to the murder of an individual unrelated to the burglary of Ms. Sims. On December 9, 2019, petitioner entered into a plea agreement whereby he would plead guilty to one felony count of second-degree murder and the State agreed to drop the remaining counts from the May of 2019 indictment and all of the charges in an October of 2019 indictment.

Petitioner and Ms. Cook initially pled not guilty to the indictments; however, Ms. Cook entered into a plea agreement on October 3, 2019, in which she agreed to testify against petitioner at trial and plead no contest to one felony count of conspiracy to commit robbery. In return, the State agreed to drop all remaining charges and not make any sentencing recommendations in her case. Ms. Cook was later sentenced to one to five years of incarceration, but that sentence was suspended for five years of probation.

Petitioner's trial began on October 16, 2019. Deputy Ritchie testified that although he was unable to get a copy of the video surveillance from the bar, he obtained clear photographs of the paused video that showed the individuals sitting at the bar. The State moved to admit those photos, and petitioner's trial counsel objected, arguing that the State bore the burden of producing the entire surveillance footage pursuant to the best evidence requirement. The circuit court noted petitioner's counsel's exception but admitted the photographs. The State used those photos throughout the trial to verify the identities of the people sitting at the bar with Ms. Sims on the day of the robbery. Further, Deputy Ritchie testified that bar employees recognized petitioner and Ms. Cook when they returned to the bar on May 12, 2018. The bar manager and Ms. Sims both testified that the photographs accurately depicted petitioner and Ms. Cook seated at the bar with Ms. Sims on the day of the robbery.

Deputy Ritchie also testified that when he went to Ms. Cook's apartment, where petitioner was living at that time, Ms. Cook consented to a search of the apartment. Officers found a .22 caliber handgun on a shelf in the bedroom closet. Deputy Ritchie took two photographs of the firearm, which the circuit court admitted over petitioner's best evidence rule objection. Ms. Cook confirmed that the photographed gun was used by petitioner on the night of the robbery. Ms. Sims testified that the gun in the photo was identical to the one petitioner used that night. At the conclusion of the State's case-in-chief, petitioner moved for a judgment of acquittal, but the circuit court denied that motion.

Petitioner did not testify during the trial. At the conclusion of the two-day trial, the jury found petitioner guilty of first-degree robbery, presenting a firearm during the commission of that robbery, conspiracy to commit robbery, assault during the commission of a robbery, and presenting a firearm during the commission of a felony. The circuit court directed that a presentence

2

investigation ("PSI") report be completed on petitioner. Thereafter, petitioner filed a motion for a new trial based on the State's failure to produce the actual surveillance footage and firearm, in addition to its failure to identify the location of the robbery. Petitioner also filed a motion for discovery of Ms. Cook's PSI for purposes of appeal. At the outset of petitioner's sentencing hearing, the circuit court denied petitioner's motion for a new trial, finding that the jury had ample opportunity to weigh the sufficiency of the photographs as evidence for identifying petitioner and the weapon used. With regard to the location of the robbery, the circuit court said that the jury "simply took the evidence at face value, accepted it, and found [petitioner] guilty of the offense." However, the circuit court granted petitioner's motion for discovery of Ms. Cook's PSI to aid in petitioner's appeal.

Petitioner's PSI revealed that he had multiple convictions, including possession of heroin/cocaine; aiding and abetting the distribution of cocaine; domestic assault; domestic battery; and destruction of property. The domestic assault conviction in 2018 stemmed from petitioner pointing a gun at his then-girlfriend during a fight, and the destruction of property charge resulted from an incident in which petitioner kicked down his then-girlfriend's door. According to the PSI, petitioner admitted that his main employment as an adult was as a drug dealer. The probation officer who completed the PSI found that petitioner did not show remorse for his criminal actions.

In contrast, Ms. Cook's criminal record includes misdemeanor convictions for disturbing the peace; a safety equipment violation; and shoplifting, in addition to a felony conviction for aiding and abetting a false statement during a purchase of firearms. Ms. Cook had attended some college courses and had plans to re-enroll in college. In imposing sentence, the circuit court noted that, unlike petitioner, Ms. Cook's crimes were nonviolent. The circuit court also remarked that Ms. Cook "had made a sincere and full break with the lifestyle that had brought her into these violent circumstances by taking the stand and publicly testifying against a co-defendant."

The circuit court sentenced petitioner to the following terms of incarceration: fifty years for first-degree robbery, one to five years for conspiracy to commit robbery, two to ten years for assault during the commission of a felony, and ten years for the use or presentation of a firearm during the commission of a felony.[1] The circuit court ordered that the first-degree robbery and conspiracy to commit robbery sentences run concurrently but that all other sentences run consecutively to those sentences. Petitioner was also ordered to pay $2,700 in restitution to Ms. Sims. Petitioner appeals from the circuit court's February 24, 2020, sentencing order.

On appeal, petitioner sets forth two assignments of error – one related to the denial of his motion for a new trial and one related to the sentence imposed by the circuit court. As we have previously stated,

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271,

---

[1] Petitioner was also sentenced to thirty years for second-degree murder for the unrelated murder.

496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

Syl. Pt. 1, *State v. Varlas*, -- W. Va. --, 844 S.E.2d 688 (2020). In addition, "[t]he question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse. *State v. King,* 173 W.Va. 164, 313 S.E.2d 440 (1984)." *State v. Crouch*, 191 W. Va. 272, 275, 445 S.E.2d 213, 216 (1994).

Petitioner first argues that the circuit court abused its discretion by denying petitioner's motion for a new trial due to the State's failure to produce original videos and failure to offer into evidence or test the firearm recovered from Ms. Cook's apartment. Petitioner asserts that he is entitled to a new trial "in the interest of justice." He contends that the State's presentation of still photographs taken of a surveillance video was not the best evidence of the video at issue so he objected to the State's admission of those photographs on best evidence grounds.[2] However, as set forth by the State, first, it was not unfair, under the best evidence rule, to admit photographs of the surveillance footage, particularly because petitioner conceded to their authenticity and the State relied on the photos solely for identification. Second, the completeness rule does not permit petitioner to admit the full surveillance footage to address issues beyond the identification of individuals involved in the robbery. We agree with the State.

Rule 1003 of the West Virginia Rules of Evidence provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." It is important to note that petitioner does not dispute the authenticity or veracity of the photographs. Further, the court has discretion to determine the fairness of admitting a duplicate into evidence. *See State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984). In addition, Rule 1002 of the West Virginia Rules of Evidence, commonly referred to as the "best evidence" rule, provides that "[a]n original writing, recording,

---

[2] Petitioner also criticizes the State's failure to identify the exact location of the alleged robbery. Further, in a three-sentence argument, without citing any authority, petitioner asserts that the State's presentation of a photograph of the firearm found at Ms. Cook's apartment deprived the jury of the opportunity to observe the firearm and deprived Ms. Sims of the opportunity to testify whether it was the same one possessed by petitioner. However, because petitioner does not cite any cases or set forth analysis as to these issues, we decline to address them. In an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Further, this Court has made clear that "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Indeed, "[a]lthough we liberally construe briefs in determining issues presented for review, . . . [issues] mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

or photograph is required in order to prove its content unless these rules or a state statute provides otherwise." We have clarified the application of this rule to recordings:

> "Audio and video tape recording transcripts are demonstrative aids for the understanding of evidence; they should be so marked and identified; and the court should instruct the jury regarding the purpose and limited use of the transcripts." Syllabus point 3, *State v. Hardesty*, 194 W.Va. 732, 461 S.E.2d 478 (1995).

Syl. Pt. 2, in part, *State v. Swims*, 212 W. Va. 263, 569 S.E.2d 784 (2002). The final rule we must consider here is Rule 106 of the West Virginia Rules of Evidence. Rule 106, our expression of the common law "rule of completeness," provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may request the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Here, no additional materials were needed to qualify, explain, or place into context the photographs used solely to identify the individuals involved in the robbery so the rule of completeness does not apply here. In addition, multiple witnesses testified that the photos properly placed petitioner, Ms. Cook, and Ms. Sims at the bar on the night of the robbery. Therefore, we conclude that the jury properly weighed this testimony against the photos and concluded, beyond a reasonable doubt, that petitioner committed the robbery. For these reasons, we conclude that the circuit court did not err in denying petitioner's motion for a new trial on this basis.

Petitioner next argues that, pursuant to *Smoot v. McKenzie*, 166 W. Va. 790, 277 S.E.2d 624 (1981), the circuit court violated the West Virginia and United States Constitutions by sentencing petitioner to seventeen to seventy years when it sentenced Ms. Cook to one to five years suspended for probation. He asserts that similarly situated co-defendants should receive similar sentences. After setting forth his sentence and Ms. Cook's sentence, petitioner asserts that "it is certainly arguable that Ms. Cook was at least as responsible as [petitioner]." He also argues that Ms. Cook's claim that she feared guns was undermined by her actions as a "straw purchaser in the federal case." In addition to failing to cite to the record even once in this portion of his argument, petitioner fails to identify the "federal case" to which he refers. Due to his blatant disregard of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, we decline to address the merits of this argument.[3] We, therefore, affirm the circuit court's February 24, 2020, sentencing order.

Affirmed.

**ISSUED:** February 19, 2021

---

[3] Rule 10(c)(7) provides, in relevant part, as follows:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton